UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NICOLE TURNER,                                            13-CV-693-FPG-MJR
                                                         REPORT AND RECOMMENDATION
                Plaintiff,

   -v-

MARK PROCOPIO, *et al.*,

                Defendants.
_____

This case has been referred to the undersigned for all pre-trial matters, including preparation of a report and recommendation on dispositive motions. (Dkt. No. 16). Before the Court are defendants Rebecca Lynn Bjorck's (Dkt. No. 28) and Dr. Justine Waldman's (Dkt. No. 30) motions to dismiss *pro se* plaintiff Nicole Turner's complaint under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the following reasons, it is recommended that the motions be granted in part and denied in part.

## BACKGROUND

Turner commenced this 42 U.S.C. §1983 action in 2013. (Dkt. No. 1). She alleges that while visiting her husband, an inmate at the Elmira Correctional Facility ("Elmira"), the prison staff accused her of carrying contraband and detained her for hours. Later that day, Turner was transported to the New York State Police ("State Police") Horseheads Barracks and then to the Arnot Ogden Medical Center ("Arnot

---

[1]     Turner's Second Amended Complaint identifies these defendants as "Rebecca Burd" and "Dr. Schaff." (Dkt. No. 10). Defendants have advised the Court that their names have changed to Rebecca Lynn Bjorck and Justine Waldman, M.D., respectively. The Clerk of Court will be directed to amend the caption of this case accordingly.

Ogden"), where medical staff x-rayed her stomach and manually searched her vaginal and anal areas for contraband. No contraband was found.

Pursuant to 28 U.S.C. §1915(e)(2)(B), the Court (Hon. Michael A. Telesca) screened Turner's initial complaint. (Dkt. No. 3). As relevant to the instant motions, the Court dismissed all claims against Bjorck and Waldman with prejudice because Turner failed to set forth any allegations against either defendant in the body of her complaint. (*Id.* at 15-17, 19-20).[2] The Court did, however, grant Turner leave to amend her complaint. (*Id.* at 22). Turner thereafter filed an amended complaint alleging in relevant part that unnamed members of the Arnot Ogden "medical staff" searched her vaginal and anal areas for contraband. (Dkt. No. 5 at 10). Upon screening the amended complaint, the Court (Hon. Michael A. Telesca) found that Turner may have been confused by the initial screening order's failure to address to what extent she could amend her complaint. (Dkt. No. 7 at 2-5). Thus, "[i]n the interests of justice and in light of plaintiff's *pro se* status," the Court allowed Tuner to "amend her complaint in order to set forth claims against the individual defendants she has named." (*Id.* at 10). With respect to Bjorck, Waldman, and the other medical staff defendants, the Court advised Turner that although "Section 1983 excludes from its reach claims of merely private conduct," the medical staff defendants might be subject to §1983 liability if they "act[ed] in concert with someone acting 'under color of state law'" to deprive her of her constitutional rights. (*Id.* at 9). Turner then filed her Second Amended Complaint, which is the operative complaint in this action. (Dkt. No. 10). The Second Amended

---

[2] Page number citations for docketed items refer to the page number(s) assigned by CM/ECF.

Complaint includes a narrative "facts" section and a "causes of action" section. The facts section sets forth the following allegations. (*Id.* at 9-11).[3]

On July 24, 2010, Turner traveled to Elmira to visit her husband. Upon being processed, Turner was detained by Adanivia Feliciano and Christopher Nunez, who accused her of carrying contraband. Feliciano and Nunez held Turner in a small room with no ventilation for approximately five hours, refusing her requests to be released. Turner asked Feliciano and Nunez if they had any documentation to justify her detention, but Feliciano advised her that they did not, and that it is their policy to hold "who we want for as long as we want." Turner also asked Feliciano, Nunez, and other correction officers if she could use a restroom, but her request was denied, and she was instead given a garbage can, which she urinated in. Nunez then removed the can from the room and instructed Turner to "do what animals do." After hours of begging and crying, Turner urinated on herself. Turner also advised Feliciano and Nunez that she suffers from fibroids that cause her severe uterine bleeding. Feliciano mocked Turner's condition, stating "I'll be sure to hook [the fibroids] up with some radiation." At some point during her detention, Nunez told Turner that he knew she "didn't have any drugs," but that if she refused to reveal who did have drugs, Turner would be arrested and "put through hell" because of her "attitude" and because she requested a lawyer.

At approximately 2:30 p.m., Turner was handcuffed and escorted by Feliciano and Investigator Jason Fifield to the State Police Horseheads Barracks. There, Turner complained to Mark Procopio and State Police officers about what had happened to her

---

[3] In addition to Bjorck and Waldman, the Second Amended Complaint names the following defendants: Mark Procopio, Adanavia Feliciano, Special Investigator Christopher Nunez, State Police Officer Angelique Heppner, Investigator Jason Fifield, Dr. Carle Werne, Arnot Ogden Medical Center, New York State Dept. of Corrections and Community Supervision, Elmira Correctional Facility, Nurse 1 Jane Doe, Nurse 2 Jane Doe, New York State Police Horseheads Barracks, Office of Special Investigations New York State Dept. of Corrections and Community Supervision.

at Elmira, and she advised the officers that she could not make it home to Maryland if she was detained any longer.  Although an unnamed police officer stated that Turner "should have been released to catch a ride home," Turner was not released and was instead handcuffed to a bench.  Procopio and unnamed State Police officers also refused Turner's request to use a restroom.

Turner began to experience heart palpitations and dizziness at the State Police barracks.  Around 6:00 p.m., she was handcuffed to a gurney and taken to Arnot Ogden via an ambulance escorted by Angelique Heppner, a State Police officer.  Upon her arrival there, she yelled for her release and asked to speak with administration.  Nurse 1 Jane Doe, Nurse 2 Jane Doe, and Bjorck harassed Turner to take her clothes off so that a manual body cavity search could be performed.  Dr. Carl Werne entered and then left Turner's room, refusing to participate in the search after learning what had happened to her that day.  Dr. Werne, Nurse 1 Jane Doe, Nurse 2 Jane Doe, Bjorck, and Waldman also refused to treat Turner for her heart palpitations and dizziness.

At Arnot Ogden, Procopio presented Turner with a search warrant.  Turner alleges in another part of her complaint that Nunez, Feliciano, and Procopio procured the warrant using "false information" and "illegal identification procedures."  (*Id.* at 12).  Nurse 1 Jane Doe said the warrant "can't be good" and pointed out that "it doesn't even have the time it was issued."  Nurse 1 Jane Doe also voiced her concern that Turner should not be in custody.  Nonetheless, Nurse 1 Jane Doe, Nurse 2 Jane Doe, Bjorck, and Waldman proceeded to manually search Turner's anal and vaginal areas and x-rayed her stomach.  Heppner remained in the room during the search.  No contraband

was found.  Turner was released in the town of Elmira at approximately 9:00 p.m. without any money or the means to return home to Maryland.

In addition to the foregoing "facts" section, the Second Amended Complaint includes a "causes of action" section setting forth seven claims.  (*Id.* at 12-13).  Bjorck and Waldman are named in the third and fifth causes of action:

> 3(c).  State Police Officer Angelique Heppner, Adanivia Feliciano, Special Investigator Christopher Nunez, Mark Procopio, Dr. Werne, Dr. Schaff [Waldman], Rebecca Burd [Bjorck], Nurse 1 Jane Doe, Nurse 2 Jane Doe participated in the illegal detention of Plaintiff at Arnot Ogden Medical Center.
>
> 5(c).  Arnot Ogden Medical Center, Dr. Werne, Dr. Schaff [Waldman], Rebecca Burd [Bjorck], Nurse 1 Jane Doe, Nurse 2 Jane Doe expressed malicious intent and then acted on this malicious intent by ignoring Plaintiff's repeated yelling and asking to be released and speak with a hospital administrator, harassing Plaintiff to participate in an illegal search, by not treating Plaintiff for her initial medical complaint, for deliberate indifference to Plaintiff's current medical condition.

The Court (Hon. David G. Larimer) screened Turner's Second Amended Complaint and allowed all but her sixth cause of action (alleging that Feliciano and Nunez engaged in "illegal identification procedures") to go forward.  (Dkt. No. 11 at 2). The Court also dismissed defendants Arnot Ogden, the New York State Dept. of Corrections and Community Supervision, the New York State Police Horseheads Barracks, the Office of Special Investigations, and the Elmira Correctional Facility from the action.  (*Id.*).  The Court directed the Clerk of Court to cause the United States Marshal to serve the summons and Second Amended Complaint on the remaining defendants.  After Bjorck and Waldman were served, they filed the instant pre-answer

motions to dismiss under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.[4] Because Bjorck's and Waldman's motions make similar arguments, the Court will address the motions together, below.

## **DISCUSSION**

I.   *Rule 8*

Bjorck and Waldman argue that the Second Amended Complaint does not comply with Fed. R. Civ. P. ("Rule") 8 because it purportedly fails to particularize how each defendant violated Turner's constitutional rights.  Rule 8 provides in relevant part that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2).  A complaint meets this requirement if it gives "fair notice" of the plaintiff's claim and the grounds upon which it relies.  *Wynder v. McMahon*, 360 F.3d 73, 77, 79 (2d Cir. 2004). This is a "lenient" standard, *id.* at 80, with dismissal "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Dismissal under Rule 8 is not warranted here because the Second Amended Complaint gives Bjorck and Waldman fair notice of Turner's claims and the grounds upon which they rely.  The "facts" section identifies both defendants by name and accuses them of illegally detaining and searching Turner and refusing to provide her with medical care, while the "causes of action" section alleges "illegal search," "illegal detention," and "deliberate indifference" by the two defendants.  The foregoing

---

[4]   The earlier screening orders are not a bar to defendants' motions to dismiss.  *See Sawyer v. N.Y. State Dep't of Corr. Servs.*, No. 11-CV-152S(F), 2015 WL 6641471, at *4 (W.D.N.Y. Oct. 27, 2015).

allegations give Bjorck and Waldman fair notice of three §1983 claims: (1) a Fourth Amendment false arrest claim; (2) a Fourth Amendment unlawful search claim; and (3) a Fourteenth Amendment deliberate indifference to medical needs claim.[5] Defendants' argument that Turner has failed to particularize her claims against them is without merit. Accordingly, the Second Amended Complaint should not be dismissed under Rule 8.

II.  *Rule 12(b)(6)*

A. *Materials to Consider in Deciding Defendants' Rule 12(b)(6) Motions*

The Court must first determine what materials it may consider in resolving defendants' motions. "In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). Affidavits generally may not be considered on a Rule 12(b)(6) motion to dismiss. *See Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000). However, the Court may consider affidavits, memoranda of law, and other materials outside the complaint relied upon by a *pro se* plaintiff so long as they are consistent with the *pro se* complaint. *See Lopez v. Cipolini*, 136 F. Supp. 3d 570, 579 (S.D.N.Y. 2015); *see also Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 170 n.1 (2d Cir. 1998) ("[W]e deem [the *pro se* plaintiff's] complaint to include the facts contained in his memorandum of law filed in response to [the defendant's] motion to dismiss.").

Here, Turner's opposition papers consist of two unsworn letters, one in response to each motion. (Dkt. Nos. 32, 38). Attached to one of the letters are Turner's medical

---

[5] The Court does not construe the Second Amended Complaint to include any state law claims against Bjorck and Waldman.

records from Arnot Ogden signed by Bjorck and Waldman stating in part: "We conducted a body search for the police today that was negative." (Dkt. No. 38 at 5). Although the letters largely reiterate the allegations within the Second Amended Complaint, one letter alleges for the first time that Arnot Ogden and its medical staff are "under contract" with Elmira and the State Police, and that it is "common" for individuals in the custody of these two entities to receive medical care from the hospital and its staff. (Dkt. No. 32 at 2). Given Turner's status as a *pro se* litigant, the Court will deem the facts contained in her letters to be part of her Second Amended Complaint. As discussed below, however, consideration of Turner's new allegation that Arnot Ogden is under contract with Elmira and the State Police does not alter the Court's recommendation as to the disposition of defendants' motions.

In support of their respective motions, Bjorck and Waldman submit a total of three affidavits. Bjorck has come forward with her own affidavit stating that she provided medical treatment to Turner pursuant to directions she received from the attending physicians, not law enforcement, and that as a nurse she does not perform body cavity searches. (Dkt. No. 28-2 ¶¶4, 6). Bjorck also submits the affidavit of Heather Delgiorno, a "risk management associate" at Arnot Ogden. (Dkt. No. 37-1). Delgiorno disputes Turner's allegation that the hospital is under exclusive contract with Elmira and the State Police to treat or search individuals in the custody of these two entities. (Dkt. No. 37-1 ¶5). For her part, Waldman submits her own affidavit stating that at the time of the events underlying the Second Amended Complaint, she was employed by Arnot Ogden, not Elmira or the State Police. (Dkt. No. 30-2 ¶3). Because

all three affidavits go well beyond what the Court may consider on a Rule 12(b)(6) motion, *see Friedl*, 210 F.3d at 83, the Court will not consider them here.[6]

   B. *Rule 12(b)(6) Standard*

A defendant may move to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). In deciding a Rule 12(b)(6) motion, the Court accepts all factual allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Application of the motion to dismiss standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Where, as here, the plaintiff is proceeding *pro se*, the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Triestman v. Fed. Bureau of Prisons*, 470

---

[6] The Court could consider the affidavits by converting defendants' motions to motions for summary judgment, *see* Rule 12(d), but it declines to take this course of action because Turner, a *pro se* party, has not been given "unequivocal notice of the meaning and consequences of conversion to summary judgment," *Hernandez v. Coffey*, 582 F.3d 303, 307-08 (2d Cir. 2009) (internal quotation marks and citation omitted), and defendants have not requested conversion, *see Kaye v. Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412, 419 (S.D.N.Y. 2013).

F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'") (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).  That said, even a *pro se* complaint must be dismissed if it does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Turner's claims against Bjorck and Waldman arise under 42 U.S.C. §1983.  To state a claim for relief under §1983, Turner must allege that she was (1) deprived of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed under color of state law — *i.e.*, state action. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  In order to satisfy the state action requirement where the defendant is a private actor, the defendant's alleged conduct must be "'fairly attributable' to the state." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).  The Second Circuit has identified three main tests to assist in determining whether a private defendant's actions are fairly attributable to the state:  (1) the "public function test," which asks whether the private actor has been delegated a public function by the state; (2) the "compulsion test," which asks whether the private actor has acted pursuant to the coercive power of the state or is controlled by the state; and (3) the "joint action test" or "close nexus test," which considers whether "the state provides significant encouragement to the [private actor], the [actor] is a willful participant in joint activity with the state, or the [actor's] functions are entwined with state policies." *Id.* (internal quotation marks and citation omitted).

C. *Turner's Claims*

The Second Amended Complaint asserts §1983 claims for unlawful search, false arrest, and deliberate indifference. Bjorck and Waldman move to dismiss these claims for failure to plead both state action and a constitutional violation. Each claim is discussed below.

1. *Fourth Amendment Unlawful Search Claim*

Turner alleges that Bjorck and Waldman unlawfully searched her vaginal and anal areas and x-rayed her stomach in order to assist the State Police in its search for contraband. The conduct Turner complains of constitutes state action under the public function, compulsion, and joint action tests.

Under the public function test, a private entity may become a state actor by "exercis[ing] powers that are 'traditionally the exclusive prerogative of the State.'" *Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974)). The "power of search" is a function "traditionally reserved exclusively to the State." *Rodriques v. Furtado*, 950 F.2d 805, 814 (1st Cir. 1991) (private physician functioned as a state actor when he manually searched plaintiff's vagina for contraband pursuant to a search warrant). Thus, when Bjorck and Waldman searched Turner for contraband at the behest of the police, they acted under color of state law pursuant to the public function test. *Id.*; *see also Warner v. Grand Cnty.*, 57 F.3d 962, 964 (10th Cir. 1995) (private individual acted under color of state law by strip searching the plaintiff at the request of the police); *Burks v. Carter*, No. 5:10CV00358 BSM, 2013 WL 822513, at *2 (E.D. Ark. Mar. 5, 2013) (finding genuine issue of material fact as to whether private physician acted under color of state law when he pumped plaintiff's stomach for

contraband). Defendants' argument that they searched Turner for medical reasons, not to assist the police, cannot be properly considered at this stage of the action.

Turner has also plausibly alleged state action under the coercion and joint action tests. Procopio allegedly presented the medical staff with a warrant authorizing the search, and medical records signed by Bjorck and Waldman state that they "conducted a body search for the police." (Dkt. No. 38 at 5). Moreover, Heppner, a State Police officer, remained by Turner's side throughout the search. The foregoing allegations raise an inference that the State Police compelled Bjorck and Waldman to carry out the search or, at a minimum, significantly encouraged them to do so. Confronted by the police and given a search warrant, Bjorck and Waldman might very well have believed they had no choice but to search Turner for contraband. *Rodriques*, 950 F.2d at 814 (finding private physician engaged in state action by searching the plaintiff "because of the 'coercive power' and 'significant encouragement' represented by the search warrant" given to him by the police) (quoting *Blum*, 457 U.S. at 1004).

In arguing that they are not state actors, Bjorck and Waldman cite cases holding that a private physician does not engage in state action simply by treating an individual in police custody. These cases do not address, and are not relevant to, the question of whether a physician engages in state action by carrying out a search for the police. *See Castro v. Sobkowiak*, No. 12-CV-1242A(Sr), 2015 WL 5316347, at *2 (W.D.N.Y. Sept. 11, 2015) (physician alleged to have prematurely discharged plaintiff from the hospital after he was brought there by the police); *Bernazard v. Bartsich*, No. 15-CV-945(JG), 2016 WL 126374, at *2 (E.D.N.Y. Jan. 9, 2016) (physicians alleged to have fabricated medical records and prematurely discharged plaintiff from the hospital after he was shot

by the police); *Koulkina v. City of N.Y.*, 559 F. Supp. 2d 300, 307, 309 (S.D.N.Y. 2008) (physicians alleged to have inadequately treated plaintiff for injuries she allegedly sustained during confrontation with the police); *Vazquez v. Marciano*, 169 F. Supp. 2d 248, 253 (S.D.N.Y. 2001) (physician alleged to have inadequately treated plaintiff brought to the hospital by the police in custody after an automobile accident); *Turturro v. Cont'l Airlines*, 334 F. Supp. 2d 383, 395-97 (S.D.N.Y. 2004) (physician alleged to have involuntarily confined plaintiff brought to the hospital by the police).

Turner's unlawful search claim also plausibly alleges that Bjorck and Waldman deprived her of a constitutional right. The Fourth Amendment enshrines "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause." *Fabrikant*, 691 F.3d at 214 (quoting *Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007)). "[T]o challenge the probable cause for a search warrant, 'the plaintiff must make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was necessary to the finding of probable cause.'" *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

Liberally construing the Second Amended Complaint, it plausibly alleges that probable cause did not exist for the alleged search. Turner alleges in particular that Nunez, Feliciano, and Procopio used "false information" and "illegal identification procedures" to obtain the search warrant. (Dkt. No. 10 at 12). This allegation is

buttressed by Turner's contention that Nunez knew she "didn't have any drugs," but that he wanted to "put [her] through hell" anyways in order to learn who at Elmira did have drugs. (*Id.* at 11).  If Nunez knew that Turner did not have drugs in her possession, then any statement to the contrary in the warrant application might very well have been knowingly or recklessly false.  Turner has also plausibly alleged that this false information was necessary to the finding of probable cause for the search.  Absent some proof that Turner did in fact have drugs in her possession, the magistrate who signed the search warrant could not have reasonably found probable cause to subject Turner to a manual body cavity search.[7]  Accordingly, Turner has adequately alleged both elements of her §1983 Fourth Amendment unlawful search claim against Bjorck and Waldman.[8]  This claim should survive dismissal.

### 2. *Fourth Amendment False Arrest Claim*

Turner's Fourth Amendment false arrest claim should be dismissed as against Bjorck and Waldman because neither defendant is alleged to have participated in her arrest.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983.") (internal quotation marks and citations omitted).  Here, Turner was arrested and detained at Elmira, not Arnot Ogden.  By the time she arrived at the hospital, she was in the custody of the State Police, who had handcuffed her to a gurney in order to transport her there.  Because Turner was

---

[7] Defendants do not argue that they relied on the search warrant in good faith, nor do they assert the defense of qualified immunity.

[8] In its second screening order, the Court found Turner's allegation that the warrant was based on unreliable and fraudulent information to state a cause of action, but it directed Turner to state who obtained and offered the warrant. (Dkt. No. 7 at 7).  Turner met this directive in her Second Amended Complaint by alleging that Nunez, Feliciano, and Procopio obtained the warrant and that Procopio presented it at the hospital.

arrested well before she met Bjorck and Waldman, her false arrest claim cannot stand against either defendant. *See Sorrell v. Cnty. of Nassau*, 162 F. Supp. 3d 156, 164 (E.D.N.Y. 2016) (dismissing false arrest claim against defendant who participated in strip search, but not arrest, of plaintiffs); *Cortes v. City of N.Y.*, 148 F. Supp. 3d 248, 255 (E.D.N.Y. 2015) (dismissing false arrest claim against officer who arrived on the scene after plaintiff had been placed under arrest by another officer).

### 3. *Fourteenth Amendment Deliberate Indifference Claim*

Turner's deliberate indifference claim should be dismissed as against Bjorck and Waldman for failure to plead that either defendant engaged in state action. Turner cannot meet the public function test because the functions of a hospital such as Arnot Ogden "have long been relegated to the private domain, rather than treated as 'traditionally the exclusive prerogative of the State.'" *Schlein v. Milford Hosp., Inc.*, 561 F.2d 427, 429 (2d Cir. 1977) (quoting *Jackson*, 419 U.S. at 353). This is so even if the hospital treats a patient brought there in police custody. *See supra* at 12-13.[9] Turner also cannot meet the compulsion or joint action tests because she does not allege that Elmira or the State Police were involved in her medical care at Arnot Ogden. *See Castro*, 2015 WL 5316347, at *4 (dismissing §1983 claim against physician because no facts suggested that the state was involved in the physician's medical judgment as to the plaintiff's treatment). Although Turner states that the State Police transported her to the hospital, this allegation falls well short of transforming Bjorck and Waldman into state actors. *See Turturro*, 334 F. Supp. 2d at 395.

---

[9] In *West v. Atkins*, 487 U.S. 42 (1988), the Supreme Court held that a physician who contracted with the state to provide medical care to a state inmate acted under color of state law. *West* is distinguishable because the state has a constitutional duty to provide adequate medical treatment to its inmates. The same cannot be said of the State Police in the instant action, who need only summon medical assistance for an arrestee, not provide that assistance themselves. *See DiGennaro v. Town of Gates Police Dep't*, No. 07-CV-6426CJS, 2013 WL 3097066, at *16 (W.D.N.Y. June 18, 2013).

Turner's new allegation that Arnot Ogden and its medical staff are under contract with Elmira and the State Police and that it is common for individuals in the custody of these two entities to receive medical care at the hospital also does not transform Bjorck and Waldman into state actors. *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 492 (2d Cir. 2009) (finding contract between private entity and government insufficient by itself to transform the entity into a state actor). The "fundamental question" in determining state action is whether the defendant's alleged misconduct is fairly attributable to the state. *Fabrikant*, 691 F.3d at 207. That question must be answered in the negative here because neither Elmira nor the State Police are alleged to have been involved in Bjorck's and Waldman's allegedly inadequate medical treatment of Turner. Accordingly, Turner's §1983 deliberate indifference claim should be dismissed as against these two defendants.

D. *Leave to Amend*

Turner should not be granted leave to amend her false arrest and deliberate indifference claims against Bjorck and Waldman because both claims are futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that a futile request to replead a *pro se* complaint should be denied). Turner cannot allege a false arrest claim against either defendant because she was arrested hours before she arrived at the hospital. Her deliberate indifference claim is futile as well for lack of state action. It is difficult to see how Turner can plead around the general rule that a physician does not engage in state action by providing inadequate medical care to an individual in police custody. Thus, Turner's false arrest and deliberate indifference claims should both be dismissed with prejudice as against Bjorck and Waldman.

**CONCLUSION**

For the foregoing reasons, it is recommended that Bjorck's (Dkt. No. 28) and Waldman's (Dkt. No. 30) motions to dismiss the complaint be granted in part and denied in part. Specifically, it is recommended that Turner's §1983 false arrest and deliberate indifference claims be dismissed with prejudice as against Bjorck and Waldman, but that her §1983 unlawful search claim not be dismissed.

The Clerk of Court is directed to amend the caption of this case to change Rebecca Burd's name to Rebecca Lynn Bjorck and Dr. Schaff's name to Justine Waldman, M.D.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Chief Judge Geraci, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Chief Judge Geraci.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED.**

Dated:   November 8, 2016
         Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge

Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED.**

Dated:   November 8, 2016
         Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge